Affirmed and Opinion filed October 24, 2002









Affirmed and Opinion filed October 24, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-01458-CV

_______________

 

RANDALL R. BUCKNER and DIMENSIONAL CIRCUITRONICS,
INC., Appellants/Cross-Appellees

 

V.

 

ROCA PRECISION MANUFACTURING,
INC. and BARRY L. FINBERG, Appellees/Cross-Appellants

_______________________________________________________________________

 

On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 97-32461

_______________________________________________________________________

 

O P I N I O N

 

In
this employment dispute, appellants Randall R. Buckner and Dimensional Circuitronics, Inc. (ADCI@), and appellees
Roca Precision Manufacturing, Inc. (ARoca@) and Barry L. Finberg, cross-appeal
a judgment in favor of Buckner and DCI on various grounds.  We affirm.

 








                                                                   Background

Finberg
was the president and chief executive officer of Roca,
a fabricator of printed circuit boards. 
Buckner was an owner and the president of DCI, another manufacturer of
circuit boards.  Roca,
Buckner, and DCI entered into three written agreements (the Aagreements@) whereby Roca
agreed to: (1) purchase equipment from DCI for $10,000 (the Abill of sale@); (2) employ Buckner as
manufacturing manager of Roca, including a base
salary and commissions on new work obtained by Buckner (the Aemployment agreement@); and (3) pay Buckner a 10%
commission on all collections received by Roca from
former DCI customers for 60 months (the Acommission agreement@). 
Six months after the agreements were entered, Finberg, on behalf of Roca, terminated them.

Buckner
and DCI sued Finberg and Roca for breach of contract,
tortious interference, and other claims and sued
Finberg individually for tortious interference with
contract.  At trial, the jury found,
among other things, that: (1) Roca breached the Acontract,@ defined in the charge as being
comprised of the three agreements; (2) Roca=s breach was excused by good cause
for discharging Buckner; (3) Buckner did not breach the contract; (4) Finberg
intentionally interfered with the contract without justification; (5) $112,000
was the amount of Buckner=s economic loss and $0 was the amount of DCI=s economic loss; and (6) the harm
caused to Buckner resulted from malice or fraud by Finberg but not Roca.  The parties
stipulated that the amount Finberg should pay to deter such conduct in the
future was $112,000.  The trial court entered
judgment in accordance with the verdict except in making no award for exemplary
damages.

                                                          Finberg
/ Roca Appeal

Although
Buckner and DCI were the first parties in this case to file a notice of appeal,
the only affirmative relief awarded in the trial court=s judgment is against Finberg, and
most of the parties= briefing pertains to that award.  Accordingly, we will address Finberg=s and Roca=s issues first.

 








                                                                 Agent
Liability

Finberg=s first issue contends that there is
no evidence or insufficient evidence of the elements necessary to prove tortious interference with a contract by an officer or
agent of a corporation that is a party to that contract.  According to Finberg, these elements include
that: (1) the interference was motivated solely by the agent=s personal interest; (2) the
interference harmed the corporation; and (2) the corporation complained about
the agent=s alleged interference.[1]

In
a case tried to a jury, a no evidence challenge is preserved by: a motion for
instructed verdict; a motion for judgment notwithstanding the verdict; an
objection to the submission of the issue to the jury; a motion to disregard the
jury=s answer to a vital fact question; or
a motion for new trial.  T.O. Stanley
Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992).  A challenge to the factual sufficiency of the
evidence to support a jury finding must be preserved with a motion for new
trial.  Tex.
R. Civ. P. 324(b)(2).  In addition, to preserve a complaint for
appellate review, a request, objection, or motion made to the trial court must
state the grounds for the ruling sought with sufficient specificity to make the
trial court aware of the complaint.  Tex. R. App. P. 33.1(a)(1)(A).  Judicial economy thus requires that a trial
court have an opportunity to correct an error before an appeal proceeds.  In re C.O.S., 988 S.W.2d 760, 765
(Tex. 1999).








In
this case, the record does not reflect that Finberg made a motion for directed
verdict, motion for judgment notwithstanding the verdict, or objection to
submission of the interference issue to the jury.  Citing Baker,[2]
Finberg=s motions to disregard the jury
findings and for new trial argued that he did not tortiously
interfere with Roca=s contracts because the evidence
conclusively proved that Finberg was so closely aligned with Roca that they were one entity.[3]  Thus, rather than contend that the evidence
was insufficient to prove additional facts necessary to establish interference
by an officer, as Finberg now asserts on appeal, his motions in the trial court
took the position that the evidence was conclusive in establishing that, as the
sole shareholder, owner, and President of the corporation, he was its agent and
therefore not a third party who had the separate legal capacity to interfere
with its contracts.[4]
Because Finberg thus did not give the trial court an opportunity to rule on the
sufficiency of the evidence to show the additional facts that the interference
was motivated solely by his personal interest, the interference harmed the
corporation, or the corporation complained about his alleged interference, the
sufficiency of the evidence to prove those facts is not properly before us for
review.  Accordingly, Finberg=s first issue is overruled.

                                                                Excused
Breach

Finberg=s second and third issues contend
that he could not be liable for tortious interference
because: (1) the jury found that Roca was excused
from complying with the contract; and (2) Roca had a
common law and contractual right to terminate the contract.








The
prefatory instructions to the jury charge stated, among other things, that the Acontract@ in this lawsuit was one overall contract
composed of the three separate agreements.[5]  The first two questions in the charge pertained
to Buckner and DCI=s breach of contract claim. 
Following question 1, to which the jury responded that Roca had breached the contract, question 2 asked whether Roca=s failure to comply with the contract was excused.  Accompanying question 2 was an instruction
(the Aexcuse instruction@) that Roca=s failure to comply, if any, was
excused if there was good cause for discharging Buckner before the agreed term
of employment expired.  The jury answered
question 2 affirmatively, negating Roca=s liability for breach of contract.

By
contrast, question 13 of the charge asked whether Finberg, without
justification, intentionally interfered with the contract.  The definitions preceding this question
stated that a person interferes with a contract between others by causing or
inducing a breach of contract or interfering with its performance; and that
interference is justified if a person had a good faith belief that he had a
right to do so.  The jury also answered
question 13 affirmatively.

In
the context of this submission, Finberg=s second and third issues assert
that: (1) Roca had a common law and contractual right
to terminate Buckner=s employment, and thus the entire contract, as defined in the
charge; and (2) Finberg did not therefore interfere with the contract by
causing Roca to exercise its right to terminate the
contract, as reflected by the jury=s finding that Roca=s breach of the contract was excused.[6]  We disagree with this analysis in two
respects.

First,
the charge definition of interference included causing a breach of the contract
but was not limited to causing an unexcused breach.[7]  Therefore, to the extent the jury determined
that Finberg caused Roca to commit the breach of
contract that it had found in answer to question 1, a further finding that
Finberg interfered with the contract by causing that breach was consistent with
its answer to question 1 and not affected by its answer to question 2 that the
breach was excused.








Second,
the charge defined interference to include not only causing a breach of the
contract, but also interfering with its performance.  To the extent the jury was persuaded that
Finberg interfered with Roca, Buckner, or DCI
performing the contract, i.e., apart from Roca=s breach,[8]
the fact that its breach was excused did not 
preclude Finberg=s liability for interference. 
Therefore, Finberg=s second and third issues are overruled.

                                                                      Damages

Finberg=s fourth issue argues that, because
the measure of damages for tortious interference with
a contract is the same as the measure of damages for breach of the contract
interfered with, it was necessary for Buckner to prove the amounts he would
have received under the contract, but he failed to do so.  Finberg further contends that the evidence is
legally or factually insufficient to support the jury=s answer that Buckner suffered
economic damages of $112,000 from the interference.[9]

The
commission agreement states, in part:

2.01
Commission Paid.   Roca
shall pay to Buckner, in addition to all of the other payments provided by the
Agreements . . ., a commission of Ten percent (10%) on all cash collections
received by Roca from the former customers of [DCI], for
a period of sixty (60) months.








2.02
Time and Amounts of Payment.  Except for
August, September and October, 1996, Roca=s monthly payments will be equal to
Ten percent (10%) of all cash collections of Roca
from former DCI customers for the previous month.  The minimum monthly payment shall be
$2,000, and the monthly payment will be adjusted each month based on
fluctuations in such sales.

2.03
Payments for August, September and October, 1996.  The monthly payments for August, September
and October, 1996 shall be $5,000 per month.

(emphasis
added).  In addition, the prefatory instructions
in the jury charge instructed the jury that it was to interpret the meaning of
the contract and, in doing so, it could consider the facts and circumstances
surrounding the making of the contract and the conduct of the parties.[10]  The foregoing paragraphs of the commission
agreement can be read to obligate Roca to pay Buckner
a total of $129,000 over a 60-month period.[11]  Up to the date of his termination, Buckner
testified that he had received $17,000 in commission payments, leaving a
balance of the $112,000 awarded by the jury. 
Therefore, the damage award was supported by the evidence, and Finberg=s fourth issue is overruled.








Finberg=s fifth issue argues that the trial
court erred in entering judgment in favor of DCI (i.e., jointly with
Buckner) because the jury found in question 15 that DCI suffered no
damages.  Although Finberg and Roca=s motion for new trial challenged the sufficiency of the
evidence to prove the damages awarded in question 15, Finberg has not cited,
and we have not found, any portion of the record where he or Roca objected to the entry of judgment in favor of DCI as
being contrary to the verdict or otherwise presented this complaint to the
trial court.  Accordingly, Finberg=s fifth issue presents nothing for
our review and is overruled.

                                                                 Attorney=s Fees

Roca=s sole issue argues that, because it successfully defended
itself against DCI=s and Buckner=s breach of contract claim, it was entitled to attorney=s fees under paragraph 7.05 of the
employment agreement, which states, AIn the event that either party is
required to enforce this Agreement by suit in any court of law, the prevailing
party shall be entitled to attorney=s fees and court costs.@ 
Therefore, Roca requests that we reverse and
render judgment awarding it the attorney=s fees found by the jury in response
to question 17.

However,
question 17 asked the jury to determine the amount of attorney=s fees incurred by Roca Ain the filing and presentation of their [sic] claims
under the contract@ (emphasis added). 
Although Roca asserted a counterclaim against
Buckner for breach of contract, the jury found that Buckner had not breached
the contract.  Therefore, Roca was not the prevailing party on its claims, and did
not obtain a jury finding on the amount of its attorney=s fees for defending against Buckner=s claims.  Therefore, the trial court did not err in
awarding Roca no attorney=s fees for defending against Buckner=s claims, and this issue is
overruled.

                                                          Buckner
/ DCI Appeal

                                                             Charge
Instruction








Buckner
and DCI=s first issue argues that the trial
court erred by refusing their proposed limiting instruction on whether Roca=s breach of the contract was excused.  As noted previously, the excuse instruction
accompanying question 2 instructed the jury that a failure by Roca to comply with the contract was excused if Roca had good cause for discharging Buckner.  Buckner and DCI contend that, even though the
charge defined the three agreements as a single contract, the termination
provision in the employment agreement did not also apply to the commission
agreement, which was not otherwise terminable. 
Buckner and DCI thus request this court to disregard the answer to jury
question 2 and render judgment against Roca for
breach of contract liability, damages, and attorney=s fees.

Although
Buckner and DCI objected to the excuse instruction at the charge conference,
they received a favorable verdict from the jury on their tortious
interference claim and then filed a motion for entry of the judgment that the
trial court subsequently entered (except as to exemplary damages, discussed in
the following section).  By filing their
motion that the trial court render judgment on the tortious
interference finding and damages awarded by the jury (and not render judgment
on the breach of contract claim, as they now request), Buckner and DCI cannot,
on appeal, take a position inconsistent with that request for judgment.  See Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 321-22 (Tex. 1984).  Rather, if they wished to proceed to judgment
for the purpose of initiating the appellate process, but without being bound by
the terms of the judgment they requested, they were required to qualify their
request for judgment accordingly.  See
First Nat=l Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex.
1989).  Accordingly, by unqualifiedly
requesting entry of judgment exclusively on the jury=s tortious
interference finding, Buckner and DCI abandoned any claim to an inconsistent
judgment, and their first issue is overruled.

                                                            Exemplary
Damages

Buckner
and DCI=s second issue argues that the trial
court erred by disregarding (without explanation) the jury=s finding of malice or fraud and
thereby refusing to render judgment on the parties= stipulation of the amount of
exemplary damages.  Question 18 of the
charge, the relevant portions of its instructions and definitions, and the jury=s answer to it were as follows:

Do
you find by clear and convincing evidence that the harm caused to Buckner
resulted from malice or fraud?

AClear and convincing evidence@ means the measure or degree of proof
that produces a firm belief or conviction of the truth of the allegations
sought to be established.

 








AMalice@ means:

a.         A
specific intent by ROCA or Finberg to cause substantial injury to Buckner; or

b.         An
act or omission by ROCA or Finberg[:]

(i)        when viewed objectively from the
standpoint of ROCA or Finberg at the time of its occurrence, involved an
extreme degree of risk, considering the probability and magnitude of the
potential harm to others; and

(ii)       of
which ROCA or Finberg had an actual, subjective awareness of the risk involved,
but nevertheless proceeded with conscious indifference to the rights, safety,
or welfare of others [Aconscious indifference@].[[12]]

*          *          *          *

Answer
AYes@ or ANo@ as to:

a.         ROCA:                  No    


b.         Finberg:                Yes   









A
jury=s answer may be disregarded by a
trial court only if the answer has no support in the evidence or the question
is immaterial.  Southeastern Pipe Line
Co. v. Tichacek, 997 S.W.2d 166, 172 (Tex.
1999).  Because there is no contention in
this case that question 18 was immaterial,[13]
we will first consider whether the answer had any support in the evidence.  In conducting a no evidence review, we view
the evidence in a light that tends to support the finding and disregard all
evidence and inferences to the contrary. 
Lenz v. Lenz, 79 S.W.3d 10, 13 (Tex. 2002).  However, meager circumstantial evidence from
which equally plausible but opposite inferences may be drawn is speculative and
thus legally insufficient to support a finding. 
Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex.
1998).

In
this case, Buckner and DCI contend that the question 18 finding was supported
by evidence showing conscious indifference. 
Question 18 was predicated upon the jury=s affirmative answer to question 13.[14]  The definitions preceding question 13 defined
an intentional interference with a contract as one in which the person desires
to interfere, or knows that his action will interfere, with the contract.  We construe the conscious indifference
definition in question 18 as requiring more culpable conduct than that
necessary to prove intentional interference in question 13.[15]








Although
the discussion of this issue in Buckner and DCI=s brief contains three pages
characterizing the purported evidence to support their claim of conscious
indifference, few of these assertions contain record cites, and those that do
so cite only to plaintiffs= exhibits 1, 2, 3, 10, 11, and 12 (the Areferenced exhibits@).[16]

The
six referenced exhibits consist of the three agreements plus three letters in
which Finberg communicated to Buckner: (1) the termination of the agreements
due to Buckner=s allegedly inadequate performance;
(2) the date Buckner=s employee insurance coverage would be cancelled; and (3) an
offer for a lower paying position at Roca.  There is nothing in the tone or content of
these letters that would support an inference of conscious indifference, as
defined by the charge.  Accordingly,
Buckner and DCI=s second issue does not demonstrate error by the trial court
in disregarding the finding on question 18 and is overruled, and the judgment
of the trial court is affirmed.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Opinion filed October 24, 2002.

Panel consists of
Justices Hudson, Fowler, and Edelman.

Do Not Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]           See,
e.g., Powell Indus., Inc. v. Allen, 985 S.W.2d 455, 457 (Tex. 1998).





[2]           See
Baker v. Welch, 735 S.W.2d 548, 548-50 (Tex. App.CHouston [1st Dist.] 1987, writ dism=d) (reversing and rendering take nothing judgment on tortious interference claim by lessee against defendant who
was founder, sole shareholder, and president of lessor
corporation because defendant and corporation had no separate identities such that
defendant could be a third party capable of interfering with the contracts of
the corporation).





[3]           Other
grounds asserted in the motions are not germane to this issue.





[4]           Finberg
does not assert this Amatter of law@ point
on appeal.





[5]           See,
e.g., Fort Worth Indep. Sch.
Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000) (noting that
agreements pertaining to the same transaction may be read together to ascertain
the parties= intent, and in appropriate circumstances, a court may
determine, as a matter of law, that multiple documents comprise a single
written contract and construe them accordingly).





[6]           In
essence, Finberg is arguing that the finding of tortious
interference is contrary to the evidence and jury=s
findings on the breach of contract claim.





[7]           Cf.
Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,
793 S.W.2d 660, 666-67 (Tex. 1990) (holding that tortious
interference can include inducing a party to exercise its contractual right to
terminate a contract); Restatement
(Second) of Torts ' 766 cmt. g (1979)
(recognizing that a defendant may not improperly interfere with a contract that
is terminable at will).





[8]           Finberg
does not challenge the sufficiency of the evidence to prove that he interfered
with any party=s performance of the contract.





[9]           In
conducting a legal sufficiency review, we review the evidence in a light that
tends to support the finding of the disputed facts and disregard all evidence
and inferences to the contrary.  Lee
Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782
(Tex. 2001).  If more than a scintilla of
evidence exists, it is legally sufficient. 
Id.  More than a scintilla
of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about a vital fact=s existence.  Id.
at 782-83.  When considering a factual
sufficiency challenge to a jury=s verdict, we consider all of the evidence and may set
aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.
1998).  Because a court of appeals is not
a fact finder, we may not pass upon the witnesses=
credibility or substitute our judgment for that of the jury, even if the
evidence would clearly support a different result.  Id. at 407.  In the absence of an objection to the
relevant portion of the jury charge, we review the sufficiency of the evidence
by reference to the charge submitted. 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001).





[10]          Similar
charge language is used where a trial court has determined that a contract
provision is ambiguous, and the meaning of the provision is therefore a fact
question to be decided by the jury.  See
Comm. on Pattern Jury Charges, State Bar
of Tex., Texas Pattern Jury Charges PJC
101.8 (2000); see also Lenape Res. Corp. v. Tenn.
Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996).  However, because this prefatory instruction did
not set forth or refer to any particular provision of the contract to be
interpreted, it authorized the jury to decide the meaning of any portions of
the three agreements that had not otherwise been construed in the charge.  Similarly, as noted above, even if the
contract was terminable by Roca, as the breach of
contract portion of the charge indicated, the charge allowed Buckner to recover
his lost contract benefits for the tortious
interference found by the jury.





[11]          This
figure is reached by adding $5,000 per month for the three months of August,
September, and October of 1996 and $2,000 per month for the remaining 57
months.  The jury apparently awarded no
interference damages for salary or commissions under the employment agreement.





[12]          Although
not relevant to this issue on appeal, question 18 also contained the following
definition of fraud:

AFraud@ occurs when -

a.          A party makes a material misrepresentation;

b.         The misrepresentation is made with knowledge of its falsity
or made recklessly without any knowledge of the truth and as a positive
assertion,

c.         The misrepresentation is made with the intention that it
should be acted on by the other party; and

d.         The other party acts in reliance on the misrepresentation
and thereby suffers injury.

AMisrepresentation@ means -

a.          A false statement of fact; or

b.         A promise of future performance made with an intent not to
perform as promised; or

c.         A statement of opinion that the maker knows to be false.

 





[13]          A
question is immaterial when it should not have been submitted, calls for a
finding beyond the province of the jury, such as a question of law, or was
properly submitted but has been rendered immaterial by other findings.  Southeastern Pipe Line, 997 S.W.2d at
172.





[14]          The
other questions upon which question 18 could have been predicated were all
answered negatively by the jury.





[15]          Conversely,
to the extent that the minimum conduct necessary to satisfy the definition of
intentional interference in question 13 would also constitute conscious
indifference in question 18, question 18 would be immaterial, and exemplary
damages would be recoverable for any conduct that would support actual
damages.  See Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 18 (Tex. 1994)
(AEvery tort involves conduct that the law considers
wrong, but punitive damages are proper only in the most exceptional cases.@); Ware v. Paxton, 359 S.W.2d 897, 899 (Tex.
1962) (AThe fact that an act is unlawful is not of itself
ground for an award of exemplary or punitive damages.@).





[16]          The
argument supporting each issue in an appellant=s brief
must contain appropriate citations to the record.  See Tex.
R. App. P. 38.1(h).  It is thus
not the obligation of the appeals court to search the record for supporting
evidence or to search other portions of the brief for supporting citations to
the record; nor would we be maintaining our position of impartiality to
undertake such efforts on a party=s
behalf.